UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES ELLARD,
     Petitioner,

vs.                                 Case No.:  3:20cv5520/MCR/EMT

FLORIDA COMMISSION ON
OFFENDER REVIEW,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner James Ellard (Ellard) filed an amended habeas petition under 28 U.S.C. § 2254 (ECF No. 7).  The Florida Commission on Offender Review (FCOR) filed an answer and relevant portions of the state court record (ECF No. 10).  Ellard filed a reply (ECF No. 14).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that Ellard is not entitled to federal habeas relief.

I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 10).[1]  Ellard was charged in the Circuit Court in and for Escambia County, Florida, Case No. 1992-CF-3246, with one count of sexual battery on an 11-year old child (Count One) and two counts of sexual activity with a 12-year old child, while in a position of familial or custodial authority (Counts Two and Three) (ECF No. 10-6 at 18–19 (Amended Information)).  Ellard entered a plea of nolo contendere to Count Three (*see id.* at 20 (Judgment)).  On February 1, 1993, the trial court adjudicated Ellard guilty and sentenced him to thirty years in the Florida Department of Corrections (FDOC), with 206 days of jail credit (*id.*).

On May 27, 1993, Ellard was convicted in the United States District Court for the Northern District of Florida, Case No. 3:92cr3132/RV/CJK, of one count of possession of a firearm by a convicted felon (ECF No. 10-3 at 19–22 (Judgment)).  The federal court sentenced Ellard to 180 months in prison, to run consecutively to the state prison sentence imposed in Case No. 92-3246, followed by a 5-year term of supervised release (*id.*).  In September 2016, Ellard's federal sentence was reduced to 120 months in prison followed by a 3-year term of supervised release (*see*

---

[1] Citations to the state court record refer to the document numbers and page numbers assigned by the court's electronic filing system.

ECF No. 10-6 at 49–55 (Request for Modifying the Conditions or Terms of Supervision with Consent of the Offender; Waiver of Hearing to Modify Conditions of Probation/Supervised Release or Extend Term of Supervision)).

On July 20, 2005, the FCOR ordered Ellard to be released from the Florida Department of Corrections (FDOC) on September 9, 2005, the tentative release date established by the FDOC, and placed on conditional release supervision until July 3, 2022, upon expiration of the maximum period for which he was sentenced (*see* ECF No. 10-6 at 34 (Order of Conditional Release); ECF No. 10-6 at 36–41 (Certificate of Conditional Release and Terms and Conditions of Supervision)).

On August 30, 2005, Ellard was instructed on the conditions of his conditional release supervision and informed that he would be on conditional release supervision until July 3, 2022, unless the FCOR otherwise released him or took other action (ECF No. 10-6 at 36–41 (Certificate of Conditional Release and Terms and Conditions of Supervision)).  Special Condition 15 instructed Ellard as follows:

> You will be delivered to the custody of the United States Marshall [sic]—Tallahassee in accordance with the detainer (92-03131—Poss. FA[firearm] by Felon–18[0] MOS [months]) placed with the Department of Corrections of the State of Florida.  If you should be released from the above authorities at any time during the duration of your conditional release, you shall report to your conditional release supervisor within 5 [sic].

(ECF No. 10-6 at 39 (Certificate of Conditional Release and Terms and Conditions of Supervision)).  Ellard refused to sign the Certificate of Conditional Release and Terms and Conditions of Supervision, and his refusal to sign was witnessed by an FDOC staff member (ECF No. 10-6 at 36–41 (Certificate of Conditional Release and Terms and Conditions of Supervision)).

On September 9, 2005, Ellard was released from the FDOC to the custody of federal officials for transportation to a federal Bureau of Prisons (BOP) institution for service of his federal sentence (*see* ECF No. 10-6 at 44 (FDOC Law Enforcement Inmate Custody Report); ECF No. 10-6 at 49–55 (Request for Modifying the Conditions or Terms of Supervision with Consent of the Offender; Waiver of Hearing to Modify Conditions of Probation/Supervised Release or Extend Term of Supervision)).

On October 7, 2016, Ellard was released from the BOP (*see* ECF No. 10-6 at 56 (Federal BOP Inmate Locator)).

On November 18, 2016, the FCOR issued a warrant for Ellard's arrest for violating the conditions of his conditional release (ECF No. 10-6 at 58–59 (Warrant for Retaking Conditional Releasee)).  On December 21, 2016, Ellard signed a Waiver of Conditional Release Violation Hearing (ECF No. 10-6 at 64 (Waiver); *see also* 10-6 at 65 (Conditional/Control Release Pre-Revocation Interview Notice of

Rights)).  On January 25, 2017, the FCOR revoked Ellard's conditional release for violating the condition requiring him to report to his conditional release supervisor within five days of his release from the BOP (ECF No. 10-6 at 70 (Amended Revocation of Conditional Release Order)).  The FCOR ordered Ellard returned to the FDOC until expiration of his sentence, without credit for time already served on conditional release (*see id.*).

On December 1, 2017, Ellard filed a habeas petition in the state circuit court where he was confined (ECF No. 10-3 at 2–6 (Petition)).  The FCOR filed a response to the petition (ECF No. 10-6 at 2–16 (Response)).  On July 20, 2018, the circuit court denied Ellard's habeas petition (ECF No. 10-8 (Order)).  Ellard sought review of the circuit court's decision in the Florida First District Court of Appeal (First DCA), Case No. 1D18-3071 (*see* ECF No. 10-9 (Notice of Appeal); ECF No. 10-10 (First DCA orders treating Ellard's briefs as petitions for writ of certiorari); ECF No. 10-11 at 2–32 (Ellard's Second Amended Petition for Writ of Certiorari); ECF No. 10-13 (FCOR's Response); ECF No. 10-14 at 2–19 (Ellard's Amended Reply)).  On March 13, 2020, the First DCA denied the petition for writ of certiorari on the merits (ECF No. 10-15).  *Ellard v. Fla. Comm'n on Offender Rev.*, 292 So. 3d 847 (Fla. 1st DCA 2020) (Mem).  The First DCA denied Ellard's motion for rehearing (ECF No.

10-16 (Ellard's Motion for Rehearing); ECF No. 10-17 (Order)).   The First DCA's

mandate issued May 18, 2020 (ECF No. 10-18 (Mandate)).

Ellard commenced this federal habeas action on June 1, 2020 (ECF No. 1).

## II.   STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that

was adjudicated on the merits in state court unless the state court's decision "was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court."   28 U.S.C. § 2254(d)(1).   The United

States Supreme Court explained the framework for § 2254 review in *Williams v.

Taylor*, 529 U.S. 362 (2000).[2]   Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that reached
> by this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.   Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

---

[2] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice
Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in
parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the
Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia)
in part II (529 U.S. at 403–13).   The opinion of Justice Stevens in Part II was joined by Justices
Souter, Ginsburg, and Breyer.

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under

§ 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S.

at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a

petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See*

*Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the petitioner must

show that he is in custody "in violation of the Constitution or laws and treaties of the

United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in

"actual prejudice," meaning, the error "had a substantial and injurious effect or

influence in determining the jury's verdict," *see Brecht v. Abrahamson*, 507 U.S.

619, 637 (1993) (internal quotation marks and citation omitted).

III.    ELLARD'S CLAIMS[3]

    **A.    Ground One:  "Conditional release as part of sentence makes for [sic] ineffective assistance of counsel and violates plea agreement."**

    **Ground Four:  "No paperwork from state prison release given to Petitioner; all paperwork was given to U.S. Marshal."**

In Ground One, Ellard alleges that during the underlying state criminal proceedings, defense counsel had a duty to explain all the ramifications of accepting or rejecting the plea deal (ECF No. 7 at 9; ECF No. 7-1 at 13, 17).  Ellard alleges he spoke with defense counsel for five to ten minutes at the county jail and for two minutes prior to his appearance in court (*id.*).  Ellard alleges conditional release was not a term of the plea deal, nor was it included in the judgment and sentence (*id.*).

In Ground Four, Ellard argues he had no knowledge of his placement on conditional release, the length or terms of his supervision, or the information regarding whom he should contact upon his release (*see* ECF No. 7 at 15).   He alleges this information was not provided to him personally upon his release from the FDOC or his release from the BOP (*id.*).

---

[3] For organizational purposes, the court has consolidated some of Ellard's claims for discussion.

The FCOR asserts an exhaustion defense with respect to the ineffective assistance of counsel (IAC) aspect of Ground One (ECF No. 10 at 10). The FCOR asserts Ellard did not present an IAC claim to the state circuit court, and although Ellard presented it to the state appellate court, it was not properly raised because it was not presented to the lower court (*id.*). With respect to Ellard's assertion that conditional release was not a term of the negotiated plea, and that he was not put on notice that he was subject to conditional release supervision, the FCOR argues Ellard presented these claims to the state circuit court, and the court properly rejected them (ECF No. 10 at 14–15). And with respect to Ground Four, the FCOR contends the state circuit court properly rejected the claim (*id.* at 15–17).

### 1.    Ineffective Assistance of Counsel (Ground One, subpart one)

### a.    Exhaustion

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner exhaust available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each

appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365–66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277–78. This is known as the "fair presentation" aspect of the exhaustion requirement.

There is also a "procedural default" aspect of exhaustion. A petitioner who fails to properly raise his federal claim in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Such procedural default can arise in two ways. *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). First, if the petitioner **raises** a claim to the state court, and the state court **correctly applies a procedural default principle of state law** to arrive at the conclusion that the petitioner's federal claim is barred, the federal court must respect the procedural bar. *Id.* at 1302 (citations omitted). Second, if the petitioner simply **never raised** a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal. *Id.* at 1303.

In the first instance, the federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a

procedural bar. *Bailey*, 172 F.3d at 1303. In the second instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Id.*

In Ellard's state habeas petition, he argued that conditional release was never mentioned, agreed to, or ordered, during the underlying criminal proceedings, by himself, defense counsel, the state attorney, or the judge (ECF No. 10-3 at 3–4). Ellard also argued he was never notified that he was on conditional release (*id.*). Ellard never argued that defense counsel was ineffective for failing to advise him of the possibility of conditional release (*see id.* at 3–5), and there is no indication that the state circuit court construed his habeas petition as asserting an IAC claim (*see* ECF No. 10-8 at 6–7).

In Ellard's appeal of the circuit court's denial of his habeas petition, Ellard presented, for the first time, the IAC aspect of his claim (ECF No. 10-11 at 8–9). Ellard alleged he entered his plea in reliance upon defense counsel's advice to do so, but defense counsel never mentioned conditional release (*id.*). Ellard also argued that his placement on conditional release "breaks" the plea agreement, and defense counsel's failure to advise him of the possibility of being placed on conditional release constituted ineffective assistance of counsel (*id.*). Ellard additionally argued that he was never notified of his placement on conditional release (*id.* at 11).

In the FCOR's responsive brief, it argued that to the extent Ellard alleged that conditional release was inconsistent with the terms of his negotiated plea agreement, and to the extent he alleged he did not receive notice of his placement on conditional release, the circuit court correctly rejected the claims (*see* ECF No. 10-13 at 9–10, 16–17). The FCOR argued that the IAC aspect of Ellard's claim was not raised in the circuit court and thus was not properly preserved for appellate review (*id.* at 10–11).

The First DCA denied Ellard's petition for writ of certiorari "on the merits," *Ellard*, 292 So. 3d at 848, without any indication that it was rejecting any of Ellard's claims on state procedural grounds. The First DCA's unreasoned rejection of Ellard's claim "on the merits" was an adjudication of the merits, for purposes of § 2254(d), of *all* of the federal claims presented in the petition for writ of certiorari, including the IAC claim. *See Richter*, 562 U.S. at 99 (holding that when a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits in the absence of any indication or state law procedural principles to the contrary).

Because Ellard presented the IAC aspect of Ground One to the First DCA, and the state court adjudicated the merits of all of Ellard's claims, Ellard satisfied the exhaustion requirement.[4]

### b.    Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (citing *Missouri v. Frye*, 566 U.S. 133, 145 (2012), and *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168. The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984) applies to claims that counsel was ineffective during the plea process. *Lafler*, 566 U.S. at 162–63 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 566 U.S. at 145 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (applying *Strickland*'s

---

[4] The FCOR asserts the same exhaustion argument with respect to Grounds Six, Seven, Eight, and Ten of Ellard's § 2254 petition (*see* ECF No. 10 at 11).  The court rejects the defense for the same reasons it has rejected it with respect to the IAC aspect of Ground One.

two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

*Strickland*'s first prong requires a defendant to show "that counsel's representation fell below an objective standard of reasonableness." *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 688). *Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of pleas, "[t]he . . . prejudice requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

In *Hill*, the claimed error of counsel was erroneous advice as to the defendant's eligibility for parole under the sentence agreed to in the plea bargain. 474 U.S. at 60. The Supreme Court found it unnecessary to determine whether there could be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because the petitioner's allegations were insufficient to satisfy *Strickland*'s prejudice requirement: "Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial." *Id.*

"Surmounting *Strickland*'s high bar is never an easy task."    *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 562 U.S. at 105.  As the court explained in *Richter*:

> An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.  *Strickland*, 466 U.S. at 689–690, 104 S. Ct. 2052.  Even under de novo review, the standard for judging counsel's representation is a most deferential one.
> . . . .
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S. [111,] 123, 129 S. Ct. [1411,] 1420[, 173 L. Ed. 2d 251 (2009)].  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  556 U.S. at 123, 129 S. Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

### c.    Federal Review of State Court Decision

Where the state court denies relief without providing an explanation or its reasoning, as the First DCA did here, the habeas petitioner must show that there was

no reasonable basis for the state court's decision.  *See Richter*, 562 U.S. at 98.  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See id.* at 102.

The First DCA could have reasonably rejected Ellard's IAC claim based upon his failure to satisfy *Strickland*'s prejudice prong.  Although Ellard asserts in his *federal* petition that he would not have accepted the plea deal if he had known about conditional release (*see* ECF No. 7-1 at 13), Ellard did not make this allegation in his *state* petition (*see* ECF No. 10–11).  In the absence of an allegation that he would not have pleaded guilty if counsel had informed him about conditional release, the First DCA did not unreasonably apply *Hill* or *Strickland* in rejecting Ellard's IAC claim.  Ellard is thus not entitled to federal habeas relief on the IAC aspect of Ground One.

## 2. Conditional Release Not Included in Plea Agreement or Judgment (Ground One, subpart two)

### Lack of Notice of Conditional Release (Ground Four)

This leaves Ellard's claim that conditional release was not mentioned in the plea agreement or the judgment and sentence, and his claim that he was not put on notice that he was subject to conditional release.

The FCOR concedes that Ellard presented these claims to the state circuit court and the First DCA, and the state courts denied them on the merits (ECF No. 10 at 14).

### a.    Clearly Established Federal Law

A state must comply with the terms of the plea agreement on which a guilty plea is based.  *See Santobello v. New York*, 404 U.S. 257 (1971).

### b.    Federal Review of State Court Decision

The relevant portions of the state circuit court's decision are the following:

> *An overview of conditional release supervision.*
>
> The Commission's jurisdiction over the conditional release program derives from Article IV, § 8(c), of the Florida Constitution, which states in pertinent part, that "[t]here may be created by law a Parole and Probation Commission with power to supervise persons on probation and to grant paroles or conditional releases to persons under sentence for crimes[.]"  In 1988, the Legislature enacted s. 947.1405, Fla. Stat., which established a conditional release program and provided that the Commission has jurisdictional authority over the program and those subject to conditional release supervision.  See s. 947.1405, Fla. Stat.  Pursuant to ss. 947.1405(2) and (6), Fla. Stat., the Commission has broad discretionary authority to impose any condition it believes is warranted on a conditional releasee, based on a thorough review of the record, including the circumstances of his crimes.
>
> The conditional release program was created for the purpose of monitoring the most serious of repeat offenders, such as Petitioner.  See s. 947.1405(8), Fla. Stat. (requiring intensive supervision of conditional releases because of their threat to public safety); Duncan v. Moore, 754 So. 2d 708, 710 (Fla. 2000), citing Rivera v. Singletary, 707 So. 2d 326, 327 (Fla. 1998): Lincoln v. Fla. Parole Comm'n, 643 So. 2d 668, 669

(Fla. 1st DCA 1994) ( conditional release was legislatively designed "to prevent certain repeat offenders' early, unsupervised release from incarceration, by making them subject to supervision, in the event of early release"). The Legislature determined "that the population of offenders released from state prison into the community who meet the conditional release criteria poses the greatest threat to the public safety of the groups of offenders under community supervision." <u>See</u> s. 947.1405(8), Fla. Stat.

For qualified inmates, placement on conditional release supervision is automatic and mandatory, as opposed to placement on probation or community control, which are court-imposed sanctions in lieu of incarceration. <u>See</u> s. 947.1405(2), Fla. Stat (directing mandatory placement on conditional release supervision, stating that a qualified inmate "*shall* upon reaching the tentative release date" be "released under supervision") (emphasis added). <u>See also</u> e.g., chapter 948, Fla. Stat. Conditional release supervision is not a function of the sentencing court, but a statutory requirement for certain inmates. <u>See</u> <u>Rivera</u>, 707 So. 2d at 327 (conditional release is "an additional post-prison supervision program for certain types of offenders that the legislature has determined to be in need of further supervision after release"). This supervision lasts until the date on which the inmate would have been released if no gain-time had been awarded, or until further order from the Commission. <u>Duncan v. Moore</u>, 754 So. 2d at 710 (while gain time may shorten the length of incarceration for certain "at risk" offenders, they will have to remain under supervision after release from prison for a period of time equal to the amount of gain time awarded).

> *Petitioner was on notice of his conditional release supervision.*
> *Conditional release supervision is not inconsistent with a negotiated plea agreement.*

Petitioner claims that conditional release supervision "was never mentioned, ordered, or signed" during the sentencing process related to his February 1, 1993, conviction and sentence for sexual activity with a child by a person in familial or custodial authority. <u>See</u> Petition, P2.

Additionally, Petitioner alleges he "never signed or given[sic] any terms as to conditional release or was told [sic]" and that because his federal sentence was to be served consecutive to his state sentence, he should have been required to serve any conditional release portion of his state sentence before he was transferred to the custody of the United States Marshals Service to begin serving his federal sentence. See Petition, P3. Petitioner alleges that since the State of Florida released him from the incarceration portion of his state sentence to the custody of the United States Marshals Service, its jurisdiction of him ended on September 9, 2005, the date he was [released] from the Department to the custody of the United States Marshals Service. See Petition, P3. To the extent Petitioner claims he is entitled to release from his current incarceration because he was not given notice be was subject to conditional release and conditional release was not a contemplated part of his negotiated plea agreement, or that the State of Florida lost jurisdiction over him when he was released to the custody of the United States Marshals Service, his argument is without merit and should be denied.

As indicated herein, conditional release supervision for qualified offenders is automatic and mandatory and is not a function of the sentencing court, but a statutory requirement for certain inmates. See Rivera, 707 So. 2d at 327; s. 947.1405(2), Fla. Stat. Petitioner was on constructive notice of his eligibility for conditional release supervision. Every individual is charged with knowledge of the domestic law of his jurisdiction. Akins, et al. v. Bethea,. et al., 33 So. 2d 638 (Fla. 1948). It is well-settled that publication of the law places all individuals on constructive notice, and that notice is adequate for due process purposes. See City of Ft. Lauderdale v. Ilkanic, 683 So. 2d 563 (Fla 4th DCA 1996); State v. Beasley, 580 So. 2d 139, 142 (Fla. 1991); Mercade v. State, 698 So. 2d 1313 (Fla. 2nd DCA 1997). See also Collie v. State, 710 So. 2d 1000, 1008 (Fla. 2nd DCA 1998) (plea bargain was not violated by subsequent sexual predator designation, because of constructive notice of designation by its publication in the statute); Dwyer v. State, 981 So. 2d 606, 609 (Fla. 4th DCA 2008) (in the context of the two-year time limitation for filing a Rule 3.850. Fla. R. Crim. P., motion, the court rejected defendant's claim that conditional release supervision was newly discovered information,

stating, "[c]onditional release is neither a fact nor 'newly discovered[,] [but is instead] an application of long-standing statutory law").

In addition to constructive notice, on June 21, 2005, by his signature on the Department Record of Inmate Discharge, Petitioner acknowledged he was subject to conditional release supervision. In at least four (4) places on the Record of Inmate Discharge, the Department notified Petitioner he was subject to conditional release supervision. Petitioner was specifically instructed "[t]o report immediately upon release from federal custody" to the Department's Tallahassee Probation and Parole Office, 1240 Blountstown Highway, Tallahassee, Florida. Petitioner was even provided the telephone number to the Department's Tallahassee Probation and Parole Office. Petitioner's signature appears under, and so acknowledges the statement, "I have been instructed on the above release procedures." See Respondent's Exhibit "L." A copy of the Petitioner's signed June 21, 2005, Record of Inmate Discharge and the related signed Notice of Responsibilities related to Petitioner's requirement to register as a sex offender. Petitioner's argument that he was not given notice he was subject to conditional release and conditional release was not a contemplated part of his negotiated plea agreement is contradicted by the record, is without merit, and should be denied.

(ECF No. 10-8 at 6–7 (referencing FDOC Record of Inmate Discharge (ECF No. 10-6 at 72) and Notice of Responsibilities as Required by Statute For Offenders Under the Care, Custody or Control of the Department (ECF No. 10-6 at 73)). Ellard sought review of the circuit court's decision in the First DCA, and the appellate court denied the petition "on the merits."

The state court reasonably rejected Ellard's claim that the FCOR was not authorized to place him on conditional release because it was not part of the sentence imposed by the sentencing court. As the state court determined, conditional release

is merely an aspect of executive clemency. And the Florida Constitution and Florida statutes authorize the FCOR to place a defendant on conditional release supervision regardless of whether it was part of the court-imposed sentence. To the extent Ellard argues that the FCOR's authority is somehow unconstitutional, this district court recently rejected a similar argument by a habeas petitioner in another case:

> There is nothing inherently unconstitutional about a state conditional-release program of this kind. A state could choose to require a 30-year sentence to be served all at once, with no break, but a state also could choose, as Florida has done, to release a defendant meeting specified criteria early, on the understanding that, if the defendant commits a new offense [or violates the terms and conditions of his release], the defendant will have to serve the rest of the sentence.

*Gaines v. Fla. Comm'n on Offender Rev.,* No. 4:14cv588/RH/GRJ, 2018 WL 1521898, at *1 (N.D. Fla. Mar. 28, 2018), *aff'd.* 788 F. App'x 623 (11th Cir. 2019).

Additionally, the state court reasonably rejected Ellard's claim that his placement on conditional release violated the terms of the plea agreement. Ellard did not show that the plea agreement included any term regarding conditional release, let alone a term that purported to countermand state law on conditional release. In the absence of such a showing, the state court's rejection of Ellard's claim was not contrary to or an unreasonable application of *Santobello*. Ellard is simply being required to serve his agreed-upon 30-year sentence, either in prison or on conditional release as authorized by state law.

The state court also reasonably rejected Ellard's claim that he was not put on notice of his conditional release supervision.  The state court found as fact that on June 21, 2005, by his signature on the FDOC Record of Inmate Discharge, Ellard acknowledged he was subject to conditional release supervision (ECF No. 10-6 at 72–73).  In at least four places on the Record of Inmate Discharge, Ellard was notified that he was subject to conditional release supervision (*id.*).  Ellard was specifically instructed "[t]o report immediately upon release from federal custody" to the FDOC's Tallahassee Probation and Parole Office, 1240 Blountstown Highway, Tallahassee, Florida (*id.* at 72).  Ellard was even provided the telephone number to that Office (*id.*).  Ellard signed his name under the statement, "I have been instructed on the above release procedures." (*id.*).

These facts, which are supported by the state court record, contradict Ellard's argument that he did not receive notice that he was subject to conditional release. Therefore, the state court reasonably rejected this claim.

Ellard has not demonstrated that the state court's rejection of Grounds One and Four were contrary to or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to federal habeas relief on either of these claims.

**B.     Ground Two:   "Federal sentence ordered consecutive and overrules state conditional release; no paperwork given to Petitioner of or about state release."** [5]

**Ground Eleven:   "State ran state conditional release while Petitioner was in federal prison and while on federal probation."**

In Grounds Two and Eleven, Ellard asserts the federal court ordered his federal sentence to run consecutive to his state sentence; therefore, when he began serving his consecutive federal sentence, his state sentence was necessarily completed, and the FCOR lost jurisdiction to supervise him (ECF No. 7 at 11, 33; ECF No. 7-1 at 13–14, 17–18).   Ellard additionally argues that by continuing his state sentence while he was serving his federal sentence, the FCOR ran his state sentence concurrently with his federal sentence and thus should have given him credit on his conditional release term for the time he served in the BOP and the gain time he had earned up to the date he was released from the FDOC to federal custody (*id.*).

The FCOR contends Ellard's claims are without merit (ECF No. 10 at 22–24). The FCOR contends that upon reaching the end of the incarceration portion of his state prison sentence, Ellard was released from state prison to begin serving the required conditional release portion of his sentence (*id.* at 24).   The FCOR contends

---

[5] The court addressed Ellard's lack of notice claim *supra* in Grounds One and Four.

Case No.:  3:20cv5520/MCR/EMT

that because Ellard had a consecutive federal prison sentence, he received the benefit

of beginning and serving his conditional release term while in service of his federal

sentence (*id.*).  The FCOR contends that Ellard's apparent claim that he should have

served his conditional release before being transferred to the federal authorities is

without merit, because his consecutive state and federal sentences could not be "split

by periods of freedom" (ECF No. 10 at 24).  The FCOR argues that Ellard's claim

that his conditional release supervision disappeared upon release to federal

authorities has no basis in law, and would frustrate the Florida Legislature's intent

to enhance public safety as set forth in section 947.1405(8), Florida Statutes, which

states:

> It is the finding of the Legislature that the population of offenders
> released from state prison into the community who meet the conditional
> release criteria poses the greatest threat to the public safety of the
> groups of offenders under community supervision. Therefore, the
> Department of Corrections is to provide intensive supervision by
> experienced correctional probation officers to conditional release
> offenders.

(ECF No. 10 at 24 (citing Fla. Stat. § 947.1405(8)).

Ellard presented his claims to the state circuit court (ECF No. 10-3 at 3–5)

and the First DCA (ECF No. 10-11 at 9–11, 21–22).  The state circuit court

acknowledged and rejected Ellard's arguments as follows:

> . . . Petitioner alleges . . . that because his federal sentence was to be
> served consecutive to his state sentence, he should have been required

to serve any conditional release portion of his state sentence before he was transferred to the custody of the United States Marshals Service to begin serving his federal sentence. <u>See</u> Petition, P3. Petitioner alleges that since the State of Florida released him from the incarceration portion of his state sentence to the custody of the United States Marshals Service, its jurisdiction of him ended on September 9, 2005, the date he was from [sic] the Department to the custody of the United States Marshals Service. <u>See</u> Petition, P3. To the extent Petitioner claims . . . that the State of Florida lost jurisdiction over him when he was released to the custody of the United States Marshals Service, his argument is without merit and should be denied.

(ECF No. 10-8 at 6). The First DCA rejected Ellard's claims "on the merits," without offering additional reasons.

The issue of whether the FCOR had jurisdiction to run Ellard's conditional release supervision concurrently with his federal sentence is purely an issue of state law and does not implicate federal constitutional concerns. "Questions of state law rarely raise issues of federal constitutional significance, because "[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."" *Tejada v. Dugger*, 941 F.2d 1551 (11th Cir. 1991) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983)); *see also Barclay v. Florida*, 463 U.S. 939, 958–59 (1983) ("Mere errors of state law are not the concern of this Court unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citation omitted).

Additionally, upon revocation of Ellard's conditional release supervision, the FCOR had jurisdiction and discretion to award Ellard, or decline to award him, credit for time he served on conditional release (including the time he was in the BOP). *See* Fla. Admin. Code r. 23-23.011(4)(m). The FCOR declined to grant Ellard this credit (*see* ECF No. 10-6 at 68, 70), which was within its discretion to do. Further, upon revocation of Ellard's supervision and return to prison, he was deemed to have forfeited, and the FDOC was statutorily authorized to forfeit, all gain-time earned up to the date of his release from the FDOC. *See* Fla. Stat. §§ 947.141(6), 944.28(1).

Ellard has not demonstrated an entitlement to federal habeas relief on the claims asserted in Grounds Two and Eleven; therefore, relief should be denied.

**C.    Ground Three: "Commission reasons [sic] for longer than 2 years of conditional release as danger/threat to society and being capital offense."**

Ellard contends the FCOR had no valid reason for establishing the length of his conditional release supervision as longer than two years, because a state-ordered interview (which Ellard refers to as the "Jimmy Ryce interview") determined he was "no danger or threat" to society, his offense was not a capital offense, and he was deemed by federal authorities (which Ellard refers to as the "federal Walsh notification panel") to be "not a sexually dangerous person" (ECF No. 7 at 13; ECF No. 7-1 at 18–19).

The FCOR contends Ellard did not present this claim to either the state circuit court or the First DCA; therefore, it is unexhausted (ECF No. 10 at 10–11).  The FCOR also contends this claim presents solely a state law issue, and it is without merit under state law (*id.* at 17).

The only constitutional limitation on the length of a term of supervision is that it, combined with the term of imprisonment, may not exceed the statutory maximum or the length of the court-imposed sentence.  Here, the record demonstrates that the FCOR ordered Ellard's term of conditional release to last until July 3, 2022, upon expiration of the 30-year sentence (less 206 days of jail credit) imposed by the sentencing court, "unless otherwise released or until other action may be taken" (*see* ECF No. 10-6 at 34, 36).  The problem for Ellard was that he violated a condition of his conditional release supervision, and the FCOR exercised its statutory authority to revoke his supervision.  As discussed *supra*, upon revocation of Ellard's supervision and return to prison, he forfeited all gain-time earned up the date of release from the FDOC, and the FCOR declined to award him credit for time he had served on conditional release (including the time he was in the BOP).  Because the term of conditional release did not exceed Ellard's 30-year sentence, which was the statutory maximum for his first degree felony, *see* Fla. Stat. § 775.082(3)(b), it was constitutional.

Ellard's argument that the FCOR did not have valid reasons for establishing a term of supervision longer than two years is purely an issue of state law.  Florida Statutes § 947.1405 sets forth the restrictions and limitations on the length of conditional release supervision.  *See* Fla. Stat. § 947.1405(6).  That statute provides:

> An inmate who has been convicted of a violation of chapter 794 . . . is subject to the maximum level of supervision provided, with the mandatory conditions as required in subsection (7), and that supervision shall continue through the end of the releasee's original court-imposed sentence.  The length of supervision must not exceed the maximum penalty imposed by the court.

Fla. Stat. § 947.1405(6).  Ellard was convicted of sexual activity in violation of Florida Statutes § 794.041 (*see* ECF No. 10-6 at 20).  Therefore, the FCOR's placing him on conditional release until expiration of the 30-year sentence imposed by the sentencing court complied with state law.

The term of supervision established by the FCOR did not violate state or federal law.  Therefore, Ellard is not entitled to federal habeas relief on Ground Three.

**D.    Ground Five:  "Instructed to contact United States Probation Office and prepaid [sic] residence while federal Bureau of Prisons contacted other pertinent [sic] by them [sic] agencies showing no conditional release, failure to report upon release from federal authorities."**

**Ground Six:  "Failure to report upon release from federal authorities."**

**Ground Eight:** **"Conditional release officer Ms. Sheila Moye lieng [sic], being biased and vindictive; perjury; filing false reports; not knowing rules she is to enforce."**

In Grounds Five, Six, and Eight, Ellard contends he was not guilty of the violation underlying the revocation of his conditional release, i.e., failing to report to his conditional release supervisor within five days of his release from federal authorities (*see* ECF No. 7 at 23–25). Ellard alleges upon his release from the BOP, he was instructed to contact only the United States Probation Office (*id.* at 23). He argues he had no knowledge of the length or terms and conditions of conditional release, and was not given any paperwork, contact information, or instructions to report to any state authorities (*id.* at 24). Ellard also argues he was not truly "released" from federal authorities when he left the BOP, because he was still under federal supervision by the United States Probation Office (ECF No. 7 at 23–24; ECF No. 7-1 at 19). And he repeats his argument, discussed *supra* in Grounds Two and Eleven, that his state sentence expired upon his release from the FDOC, and the FCOR could not "transfer" or "add" conditional release to his federal sentence (ECF No. 7 at 23). Ellard also argues that Conditions 1 and 15 were inconsistent with respect to when he was required to report, because Condition 1 stated he was to report within three days of his release, but Condition 15 stated five days (ECF No. 7 at 25; ECF No. 7-1 at 19). And he alleges his conditional release supervisor lied to

him, illegally took a buccal swab, displayed bias and vindictiveness, and committed perjury by including false statements in her violation report (ECF No. 7 at 26–28)

The FCOR contends Ellard waived his right to challenge his supervisor's conduct by waiving his right to a revocation hearing and agreeing that he could be found guilty on the basis of the evidence before the FCOR (ECF No. 10 at 19).  The FCOR contends the state court properly rejected Ellard's remaining claims (*id.* at 15–17).

### 1.    Clearly Established Federal Law

Ellard essentially challenges the sufficiency of the evidence to support the FCOR's determination that he violated the reporting requirement of his conditional release supervision.

A claim of insufficiency of the evidence derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict.  In *Douglas v. Buder*, the Supreme Court held that a revocation of probation was invalid under the Due Process Clause where there was no evidentiary support for the state court's finding that the probationer violated the conditions of probation.  412 U.S. 430 (1973).  However, as recognized by the Eleventh Circuit, the Supreme Court has not established that due process in a revocation proceeding requires proof beyond a reasonable doubt that the parolee or

conditional releasee committed the alleged violation. *See United States v. Taylor*, 931 F.2d 842, 848 (11th Cir. 1991) (there is no requirement in a probation revocation hearing to prove beyond a reasonable doubt that the defendant committed the alleged acts; all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation). Indeed, the Supreme Court has not specifically stated the standard of proof that must be met in revocation proceedings to satisfy the Due Process Clause. *See, e.g., Black v. Romano*, 471 U.S. 606, 615–16 (1985) ("*Bearden v. Georgia*[, 461 U.S. 660, 666, & n.7 (1983)] recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution. We have no occasion in the present case, however, to decide whether concerns for fundamental fairness prohibit the automatic revocation of probation in any other context.").

### 2.    Federal Review of State Court Decision

The state circuit court found as fact that on August 30, 2005, Ellard was instructed on the conditions of his conditional release supervision and informed that he would be on conditional release supervision until July 3, 2022, the expiration of his maximum sentence, or until further order from the FCOR (*see* ECF No. 10-8 at

3).  The state court further found that one of the enumerated conditions of the

Certificate of Conditional Release and Terms and Conditions of Supervision stated:

> You will be delivered to the custody of the United States Marshall
> [sic]–Tallahassee in accordance with the detainer (92-03131–Poss. FA
> By Felon–18[0] MOS [months]) placed with the Department of
> Corrections of the State of Florida.  If you should be released from the
> above authorities at any time during the duration of your conditional
> release, you shall report to your conditional release supervisor within 5
> [days.]

(ECF No. 10-8 at 3 (Order); 10-6 at 39) Certificate of Conditional Release and Terms

and Conditions of Supervision)).  The state court found as fact that Ellard refused to

sign his Certificate of Conditional Release and Terms and Conditions of Supervision

(*id.*).    Additionally, the court found as fact that Ellard was released from the

incarceration portion of his federal sentence on October 7, 2016 (*id.*).  The court

adjudicated Ellard's challenge to the revocation as follows:

> Petitioner's . . . claim related to his conditional release revocation
> is that he should not have been violated for not reporting for conditional
> release supervision upon his release from federal custody because the
> State of Florida "failed to notify [the] federal prison" that Petitioner was
> to report for conditional release supervision.  See Petition, P2.  The
> State of Florida notified Petitioner of his duties and responsibilities
> upon his release from prison.  See Exhibits "D" and "L".  As detailed
> above, Petitioner was had [sic] actual notice, and acknowledged, that
> he was to report for conditional release supervision upon his release
> from federal custody.  See Exhibits "D" and "L".  For qualified inmates,
> placement on conditional release supervision is a statutory
> requirement—the domestic law of the State of Florida—and is
> automatic and mandatory.  See s. 947.1405(2), Fla. Stat.  As every
> individual is charged with knowledge of the domestic law of his

> jurisdiction, Petitioner was on constructive notice that he was required
> to serve conditional release supervision.

(ECF No. 10-8 at 9 (citations omitted) (referencing Certificate of Conditional Release and Terms and Conditions of Supervision (ECF No. 10-6 at 36–41) and State of Florida Department of Corrections Record of Inmate Discharge and Notice of Responsibilities as Requested by Statute for Offenders Under the Care, Custody or Control of the Department (ECF No. 10-6 at 72–73)).

Ellard presented his challenges to the FCOR's revocation decision to the First DCA (*see* ECF No. 10-11 at 8–30). The First DCA denied Ellard's claims "on the merits" without stating its reasons.

Ellard has not demonstrated, by clear and convincing evidence, that the state court's factual findings are unreasonable in light of the evidence in the state court record. The documents referenced by the state court demonstrate that Ellard was notified that upon his release from the FDOC he was on conditional release supervision, and that upon his release from federal custody he was required to immediately report to the Tallahassee Parole and Probation office (*see* ECF No. 10-6 at 36–41, 72–73).

The state court record also includes a copy of the Notice of Hearing, Notice of Rights, and Waiver of Conditional Release Violation Hearing, which Ellard signed on December 21, 2016 (ECF No. 10-6 at 64–66). The Notice of Hearing

notified Ellard of the alleged failure-to-report violation (*id.* at 66). The Notice

quoted the language of the relevant condition and alleged that on October 7, 2016,

Ellard was released from federal prison, and he failed to report within five days of

being released (*id.*).

The Notice of Rights notified Ellard that, among other rights, he was entitled

to appear at the violation hearing, present documents and witnesses, and speak on

his own behalf (ECF No. 10-6 at 65). Ellard initialed the sentence, "I hereby freely

and voluntarily waive my right to said violation hearing." (*id.*). Ellard also signed

the Waiver, which incorporated the Notice of Hearing, and by doing so Ellard

acknowledged the following:

> I am waiving the requirement for the Commission to conduct a
> violation hearing regarding my alleged violation(s). I further
> understand that as a result of this Waiver, and based upon the violation
> report and any other relevant documents or evidence received herein, I
> may be found guilty of any or all violation(s) appearing on the Notice
> of Hearing and that such violation(s) shall constitute a willful
> violation(s) of a substantial condition(s) of my supervision.
> . . . .
> I fully understand that any final decision will be made solely by
> the Commission and that the Commission will decide whether to
> discharge me from supervision, reinstate my supervision or revoke my
> supervision.

(ECF No. 10-6 at 64).

The FCOR's revocation decision stated that the evidence upon which it relied

was the violation report submitted by Ellard's supervisor, Sheila Moye, and the

waiver signed by Ellard on December 21, 2016 (*see* ECF No. 10-6 at 70 (FCOR Amended Revocation of Conditional Release Order); ECF No. 10-6 at 60–62 (FDOC Violation Report)).

The only clearly established law on Ellard's claim is the Supreme Court's holding in *Douglas*, that a revocation of supervision violated the Due Process Clause where there was no evidentiary support for finding that the defendant violated the conditions of his supervision. Supervisor Moye's report was some evidence that Ellard violated the reporting condition of his supervision. Further, Ellard did not dispute, in the FCOR proceedings or the state court proceedings, that he failed report to his conditional release supervisor after he was released from the BOP.

Ellard has not demonstrated that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to federal habeas relief on Grounds Five, Six, and Eight.

### E.    Ground Seven: "Designation as Sexual Predator."

Ellard asserts the sentencing court did not designate him a sexual predator ECF No. 7 at 26; ECF No. 7-1 at 15–16, 19). He contends the FCOR imposed special conditions of his conditional release pursuant to statutory provisions that were enacted after his offense conduct (July 6, 1992) and sentencing (February 1, 1993)

(*id.*).  Ellard contends the conditions of his supervision related to those statutory provisions must be removed, presumably on ex post facto grounds (*id.*).

The FCOR contends the Commission is authorized to imposed any special conditions it deems proper from its review of the record, and Florida courts have upheld this authority (ECF No. 10 at 18).  Therefore, Ellard's claim should be denied (*id.*).

### 1.    Clearly Established Federal Law

The only possible federal claim presented in Ground Seven is an ex post facto argument, i.e., that the FCOR imposed statutory conditions upon him that were enacted after the date of his offense conduct.  The Ex Post Facto Clause prohibits "the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred."  *Weaver v. Graham*, 450 U.S. 24, 30 (1981); *see* U.S. Const. art. I, § 10.  To fall within the ex post facto prohibition, a law must be retrospective, in that it must apply to events occurring before its enactment.  *See Lynce v. Mathis*, 519 U.S. 433, 441 (1997).  "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated."  *Weaver*, 450 U.S. at 30.

### 2.    Federal Review of State Court Decision

Ellard presented the essence of his ex post facto argument to the First DCA (*see* ECF No. 10-11 at 21, 25–29).  The First DCA denied Ellard's claims "on the merits," with no explanation of its reasons.

Effective on or before the date of Ellard's offense conduct, the conditional release statute provided, in relevant part:

> (6) . . . [T]he commission shall conduct a review of the inmate's record for the purpose of establishing the terms and conditions of the conditional release.  The commission may impose any special conditions it considers warranted from its review of the record.  If the commission determines that the inmate is eligible for release under this section, the commission shall enter an order establishing the length of supervision and the conditions attendant thereto.

Fla. Stat. § 947.1405(6).  The statutory provisions cited by Ellard, which were enacted after his offense conduct and sentencing, made certain conditions mandatory, but it did not limit the FCOR's discretion to impose any conditions it deemed were warranted by his record.  *See Grace v. FPC*, 985 So. 2d 1213 (Fla. 1st DCA 2008) (upholding the Commission's action in imposing any special conditions that it deemed were warranted from a review of the record under § 947.1405(6)); *Ortiz v. Fla. Parole Comm'n*, 15 So. 3d 941 (Fla. 3d DCA 2009) (Commission has discretionary authority to impose special conditions under § 947.1405(6)).

The conditions of Ellard's supervision were warranted, considering the nature of his conviction (sexual activity with a child) and his prior conviction for sexual

activity with a child (*see* ECF No. 10-6 at 27, 31–32). The FCOR did not retroactively apply statutory provisions; rather, it acted within its discretionary authority to impose conditions warranted by Ellard's record. The state court reasonably rejected Ellard's ex post facto argument; therefore, he is not entitled to federal habeas relief on Ground Seven.

### F.    Ground Nine: "Florida Commission on Offender Review untimely [sic] notice of revocation, terms not allowed [sic] therefore not knowing what they are allowed to enforce, coinciding [sic] and showing federal jurisdiction."

Ellard contends the FCOR was untimely in notifying him of its revocation of his conditional release supervision (ECF No. 7 at 29). He appears to argue that the FCOR had thirty days from December 21, 2016, the date he signed the Waiver of Conditional Release Violation Hearing, to notify him of its decision; but the FCOR did not issue its decision until January 25, 2017, and then did not notify him of it until February 24, 2017 (*id.*). Ellard additionally includes the ex post facto arguments addressed *supra* in Ground Seven (ECF No. 7 at 30–32; ECF No. 7-1 at 15–16).

The FCOR contends the state court properly rejected Ellard's claim (ECF No. 10 at 20–21).

Ellard presented this claim to the state circuit court (ECF No. 10-3 at 3). The state court adjudicated the claim as follows:

Petitioner claims the Commission was untimely in notifying him of its revocation of his conditional release supervision in that the Commission had thirty (30) days to respond to his December 21, 2016, waiver or to "violate" him but did not notify him of his revocation until February 24, 2017, sixty-six (66) days after the date of his waiver.  See Petition, P2, 3, 4.  For support, Petitioner cites to the language on the Commission's Waiver of Conditional Release Violation Hearing, which reads, "I understand that I will be notified of the Commission's decision within a reasonable time, not to exceed thirty (30) days from the date of the Commission action resulting from this waiver.  See Petition, P12.  See also Exhibit "I".

Petitioner has misinterpreted the language in the Waiver of Conditional Release Violation Hearing.  The Commission must notify Petitioner within "thirty (30) days *from the date of the Commission action resulting from [the] waiver,]*" not within thirty (30) days from the date of the waiver itself.  See Exhibit "I".  The Commission action that results from a waiver is, generally, one of two things:  (1) a revocation of supervision, or (2) a restoration to supervision.  See Rule 23- 23.011(4)G); F.A.C.  Here, the Commission action resulting from the waiver was the January 25, 2017, Revocation of Conditional Release Order.  See Exhibit "J".  As indicated by Petitioner, he received the Revocation of Conditional Release Order within thirty (30) days of the date of the Commission action resulting from the waiver.  See Petition, P3, 4, 13, 15.  The Commission was not untimely in notifying Petitioner of its decision subsequent to his waiver of his conditional release revocation hearing, and his argument is contradicted by the record, is without merit, and should be denied.

(ECF No. 10-8 at 8) (referencing FCOR Waiver of Conditional Release Violation Hearing (ECF No. 10-6 at 64) and FCOR Revocation of Conditional Release Order (ECF No. 10-6 at 68)) (footnotes omitted).  Ellard then presented his claim to the First DCA, and the court denied it "on the merits."

Ellard's claim that the FCOR did not timely notify him of its decision is purely an issue of state law.  Further, Ellard's claim is without merit, for the reasons stated by the state court (i.e., Ellard received notification of the FCOR's decision within thirty days of its decision) (*see* ECF No. 10-6 at 64, 68, 70).  Therefore, Ellard is not entitled to federal habeas relief on Ground Nine.

**G.    Ground Ten: "Denied counsel throughout legal proceedings."**

Ellard alleges he filed a motion for appointment of counsel in the state circuit court, but it was returned to him (ECF No. 7 at 32).  He alleges he also filed a motion for appointment of counsel in the First DCA, but the court denied the motion (*id.*).

The FCOR contends to the extent Ellard's claim is directed at his conditional release violation proceedings, he waived his right to a hearing and any right to counsel in those proceedings (ECF No. 10 at 21).  The FCOR contends that to the extent Ellard asserts he was entitled to counsel in the state court proceedings, he is not entitled, as a matter of right, to appointment of counsel in a civil extraordinary relief proceeding, nor did he establish a need for appointed counsel in the state court proceedings  (*id.*).

The Constitution does not require appointment of counsel in proceedings to revoke supervised release where, as here, the revocation sentence to be served in the event of a violation was established at the time of trial.  *See Gagnon v. Scarpelli*,

411 U.S. 778, 787–88 (1973). It logically follows that a defendant has no right to counsel to *appeal* a revocation decision. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 757 (1991) ("Given that a criminal defendant has no right to counsel beyond his first appeal, . . . it would defy logic for us to hold that [a defendant] had a right to counsel to appeal a state collateral determination of his claims of trial error."). Because Ellard had no constitutional right to counsel in the post-revocation collateral review proceedings in state court, he is not entitled to federal habeas relief on Ground Ten.[6]

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

---

[6] Ellard does not claim he was denied counsel in the FCOR's conditional release revocation proceeding. But even if he did make that claim, it is without merit, because the state court record includes his written waiver of any right to counsel in the conditional release revocation proceeding (*see* ECF No. 10-6 at 64–65).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336  (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773  (2017) (citing *Miller-El*, 537 U.S. at 327).   The petitioner here cannot make that showing.   Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the amended habeas petition (ECF No. 7) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

3.    That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 26th day of March 2021.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**